# In the United States Court of Appeals

## for the Fourth Circuit

EDWARD JEWETT, *in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia*; BRENDA HAMILTON, *in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia*; and KELLY FLANNAGAN, *in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia*

*Defendants – Petitioners*,

*v.*

COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INC.; and LEE BHM, LLC, *Publisher of the Richmond Times-Dispatch, The Roanoke Times, Bristol Herald Courier, Lynchburg News and Advance, Fredericksburg Freelance Star and The Daily Progress*

*Plaintiffs – Respondents.*

On Appeal from the United States District Court
for the Western District of Virginia at Abingdon

### ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL

ROGER MYERS
RACHEL MATTEO-BOEHM
**BRYAN CAVE LEIGHTON PAISNER LLP**
3 Embarcadero Center, 7th Floor
San Francisco, California 94111
Tel: (415) 675-3400
Fax: (415) 675-3434
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com

DABNEY J. CARR IV
LAUREN H. MILLER
**TROUTMAN PEPPER LOCKE LLP**
Post Office Box 1122
Richmond, Virginia 23218
Tel: (804) 697-1200
Fax: (804) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs-Respondents Courthouse News Service,
Lee Enterprises, Incorporated and Lee BHM LLC*

# DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Plaintiffs-Respondents make the following disclosure statements. Courthouse News Service is not a publicly traded corporation or a trade association and has no parent corporation. Lee Enterprises, Inc. is a publicly held entity and has no parent corporation. David Hoffman/Jerrilyn Hoffman Revocable Trust, Quint Digital Limited, and GAMCO Investors, Inc. own 10% or more of the stock of Lee Enterprises, Inc. Lee BHM LLC is not a publicly traded corporation or trade association. Lee BHM LLC is a wholly owned subsidiary of Plaintiff-Respondent Lee Enterprises, Inc. There are no other publicly held corporations or publicly held entities that have a direct financial interest in the outcome of this litigation.

This appeal does not arise out of a bankruptcy proceeding or a criminal case in which there was an organizational victim.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................1

STATEMENT OF THE CASE ............................................................................3

    A.    Subscribers Cannot Provide Information in OCRA Records to the Press ...............................................................................................4

    B.    This Court Addressed Standing in CNS' First Case Over OCRA .........4

    C.    Lee Joined CNS To Challenge the Dissemination Restriction Because It Impairs Their Ability to Gather News From OCRA Subscribers ...................................................................................6

ARGUMENT.......................................................................................................8

I.    This is Not an 'Exceptional Situation' Justifying Interlocutory Review........10

    A.    Permission to Appeal the Prior Restraint Ruling Should be Denied....11

        1.    Reversal Would Not End Nor Significantly Alter the Case.......11

        2.    There is No Real Dispute OCRA Bars Speech in Advance.......12

    B.    Permission to Appeal the Standing Ruling Should Also be Denied.....15

        1.    Standing is Often Not Certified as Plaintiffs Can Amend..........16

        2.    Recent Precedent Resolves the Issue Petitioners Raise.............16

    C.    Petitioners Do Not Show the Required Exceptional Circumstances....18

II.    Section 1292(b) May Not be Used to Evade Limits on Collateral Orders .....19

CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. ex rel. A1 Procurement, LLC v. Thermcor, Inc.*,
173 F. Supp. 3d 320 (E.D. Va. 2016) ................................................................13

*Abney v. United States*,
431 U.S. 651 (1977) .........................................................................................19

*ACLU v. Holder*,
673 F.3d 245 (4th Cir. 2011) ...........................................................................17

*Alexander v. United States*,
509 U.S. 544 (1993) ...............................................................................6, 12, 13

*Baggett v. Bullitt*,
377 U.S. 360 (1964) ...........................................................................................2

*Baudin v. Palo Alto Unified Sch. Dist.*,
2026 WL 370395 (N.D. Cal. Feb. 10, 2026) ....................................................14

*Billups v. City of Charleston*,
961 F.3d 673 (4th Cir. 2020) ........................................................................8, 12

*CBS Inc. v. Young*,
522 F.2d 234 (6th Cir. 1975) ...........................................................................13

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) .........................................................................................15

*Clark Const. Grp., Inc. v. Allglass Sys.*,
2005 WL 736606 (D. Md. Mar. 30, 2005) ........................................................15

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013) ...........................................................................15

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ...........................................................................................3

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ...........................................................................13

*Courthouse News Serv. v. Hade*,
580 F. Supp. 3d 289 (E.D. Va. 2022)............................................................5

*Courthouse News Serv. v. Hade*,
631 F. Supp. 3d 349 (E.D. Va. 2022)......................................................*passim*

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014)......................................................................5

*Courthouse News Serv. v. Planet*,
947 F.3d 581 (9th Cir. 2020)......................................................................5

*Courthouse News Serv. v. Schaefer*,
2 F.4th 318 (4th Cir. 2021)........................................................................4

*Courthouse News Serv. v. Smith*,
126 F.4th 899, 917 (4th Cir. 2025)......................................................*passim*

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
78 F.3d 920 (5th Cir. 1996).....................................................................17

*Difelice v. U.S. Airways, Inc.*,
404 F. Supp. 2d 907 (E.D. Va. 2005).......................................................21

*Does v. Musk*,
2026 WL 242062 (D. Md. Jan. 29, 2026) ...............................................16

*In re Dow Jones & Co.*,
842 F.2d 603 (2d Cir. 1988) ......................................................................9

*Edgar v. Haines*,
2 F.4th 298 (4th Cir. 2021).................................................................18, 20

*Fannin v. CSX Transp., Inc.*,
873 F.2d 1438, 1989 WL 42583 (4th Cir. 1989)..........................3, 10, 18, 19

*In re Flor*,
79 F.3d 281 (2d Cir. 1996) .....................................................................14

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002)...................................................................12

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) ................................................................................11

*King v. Youngkin,*
122 F.4th 539 (4th Cir. 2024) .......................................................................20

*Liverman v. City of Petersburg,*
844 F.3d 400 (4th Cir. 2016) .........................................................................14

*McBurney v. Cuccinelli,*
616 F.3d 393 (4th Cir. 2010) .........................................................................20

*McCullen v. Coakley,*
573 U.S. 464 (2014) .........................................................................................8

*Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc.,*
317 F.2d 741 (4th Cir. 1963) ...................................................................10, 18

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.,*
848 F.3d 330 (4th Cir. 2017) ...........................................................................2

*In re Miedzianowski,*
735 F.3d 383 (6th Cir. 2013) .........................................................................12

*Moore v. Va. Cmty. Bankshares, Inc.,*
2023 WL 12007530 (W.D. Va. June 21, 2023) .............................................16

*In re Murphy-Brown, LLC,*
907 F.3d 788 (4th Cir. 2018) .........................................................................13

*Ostergren v. Frick,*
2020 WL 1501918 (W.D. Mich. Mar. 30, 2020) ...........................................14

*Ostergren v. Frick,*
856 F. App'x 562 (6th Cir. 2021) ..................................................................14

*Overbey v. Mayor of Baltimore,*
930 F.3d 215 (4th Cir. 2019) ...........................................................8, 9, 17, 20

*Papania v. United States,*
715 F. Supp. 3d 789 (E.D. Va. 2024) ............................................................11

*Pell v. Procunier,*
417 U.S. 817 (1974) .......................................................................................15

*Prince v. Johnson Health Tech Trading, Inc.,*
2023 WL 3190403 (W.D. Va. May 1, 2023) .................................................16

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ........................................................................15

*Smith v. Daily Mail Pub'g Co.*,
    443 U.S. 97 (1979) ........................................................................13

*Soderberg v. Carrion*,
    999 F.3d 962 (4th Cir. 2021) ...................................................*passim*

*Stephens v. Cnty. of Albemarle*,
    2005 WL 3533428 (W.D. Va. Dec. 22, 2005) ...............................14

*Stephens v. Cty. of Albemarle*,
    524 F.3d 485 (4th Cir. 2008) ...........................................9, 16, 17

*Swint v. Chambers Cnty. Comm'n*,
    514 U.S. 35 (1995) ..................................................................19, 20

*In re Trump*,
    928 F.3d 360 (4th Cir. 2019) .......................................................16

*In re Trump*,
    958 F.3d 274 (4th Cir. 2020) (en banc) .......................................16

*Trump v. D.C.*,
    141 S. Ct. 1262 (2021) .................................................................16

*United States v. Wecht*,
    484 F.3d 194 (3d Cir. 2007) ..........................................................9

*Va. St. Bd. of Pharmacy v. Va. Citizens Consumer Council*,
    425 U.S. 748 (1976) .......................................................................9

*In re Wall St. J.*,
    601 F. App'x 215 (4th Cir. 2015) (per curiam)........................8, 13

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) .........................................................13

*Ex parte Young*,
    209 U.S. 123 (1908) ...............................................................5, 19, 20

**Statutes**

28 U.S.C. § 1292(b) ....................................................................... 7, 10, 18, 19

Va. Code § 17.1-293(E)(7) ......................................................................... 4

Va. Code § 17.1-293(H) ....................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 5

Fed. R. Civ. P. 12(b)(6) ............................................................................. 5

**Constitutional Provisions**

U.S. Const., Amend. I ........................................................................... *passim*

# INTRODUCTION

Plaintiffs-Respondents – one of whom publishes the most newspapers in Virginia while another covers the most courts – sued over a Virginia law (and Defendants-Petitioners' agreements enforcing it) that only allows "officers of the court" to access new filings online and restrains them from telling journalists anything in them, even from courts too distant for reporters to reach. Comp., ¶¶ 60-61 (Doc. 1). These restraints thus "infringe Plaintiffs' First Amendment rights, and the rights of the public, to gather, disseminate and read about newsworthy information to which a constitutional right of access exists." *Id.*, ¶ 62.

This is not a theoretical concern. Time and again, a subscriber to "Officer of the Court Remote Access" ("OCRA") told journalists working for Lee Enterprises, Incorporated and Lee BHM LLC (collectively "Lee") and for Courthouse News Service ("CNS" and, with Lee, "Plaintiffs") he was willing to provide them information from the records, but OCRA did not allow it. *Id.*, ¶¶ 11-12, 67-85.

Last month, Richmond media were unable to report on a complaint filed June 9 by a former Virginia Tech Rector against Gov. Spanberger for two days because it took 7 hours to drive the 392-mile roundtrip to get a copy and they could not call OCRA subscribers for assistance. *See* Appellees' Reply in Supp. of Mot. to Expedite the sovereign immunity appeal in No. 26-1648 (Doc. 29-1) (attached as Exh. 1). While accelerated briefing was denied in that case on July 7 (Doc. 30),

1

the scheduling order issued July 15 ends briefing by mid-October (Doc. 31).

That appeal can therefore be quickly decided and remanded to determine if Virginia Code § 17.1-293(H) ("Dissemination Restriction") satisfies constitutional scrutiny. But the extra interlocutory appeal Petitioners seek will delay the proceedings for no purpose, as the history of the prior OCRA litigation shows. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 368 (E.D. Va. 2022) (finding Dissemination Restriction as applied there not a restraint on speech subject to strict scrutiny but a time, place and manner restriction, which did not terminate the case, only altered the level of scrutiny) ("*Hade II*"), *vacated on standing grounds, aff'd in part on another issue sub nom. Courthouse News Serv. v. Smith*, 126 F.4th 899, 917 (4th Cir. 2025) (remanding Dissemination Restriction claim because "'dismissal for lack of standing ... must be … without prejudice'").[1]

The Supreme Court recognizes that "piecemeal adjudication … delaying ultimate adjudication on the merits for an undue length of time… may inhibit the exercise of First Amendment freedoms." *Baggett v. Bullitt*, 377 U.S. 360, 378-79 (1964). And this Court has "cautioned 'that [28 U.S.C. § 1292(b)] should be used sparingly and thus that its requirements must be strictly construed.'" *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017).

---

[1] Unless otherwise noted, all citations for quotations within quotations are omitted, **emphases** in bold italics are added while *emphases* in italics were in the original.

Petitioners do not address either concern. The district court acknowledged the latter but not Petitioners' failure to discuss, let alone show, the "'exceptional circumstances'" required for certification. *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, *2 (4th Cir. 1989) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978)) (only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment'"). Nor did its summary of Petitioners' theories show the requisite "substantial ground for difference of opinion" on a controlling question of law.

As in *Fannin*, then, this Court should "deny the motion … for leave to appeal" despite the certification below. 873 F.2d 1438 at *6.

## STATEMENT OF THE CASE

Petitioners describe allowing "anyone, anywhere, and at any time, [to] access and obtain Virginia court records" in civil cases as if it would be a bad or abnormal thing. Pet. 9 (Doc. 2).[2] But it is what this Court does, and virtually every other federal court, through PACER. Comp., ¶ 36. So do courts in at least 37 states and the District of Columbia. *Id.*, ¶ 37. None impose a "gag" on those who obtain remote access to these public court records online that prevents them from telling members of the press or public what is in these nonconfidential records. *Id.* Only Virginia.

---

[2] Citations to page numbers of ECF documents are to the numbers atop the page.

**A.** <u>**Subscribers Cannot Provide Information in OCRA Records to the Press**</u>

At least 112 of Virginia's 120 Circuit Courts make civil complaints available online through OCRA, which the Office of the Executive Secretary of the Virginia Supreme Court ("OES") created and controls. Comp., ¶¶ 20, 53, 56 & 64. These records are not "confidential." *Cf.* Pet. 13. They are the same nonconfidential records available at the court, but journalists cannot use OCRA to cover cases because of its Access and Dissemination Restrictions. Comp., ¶¶ 4, 63, 66.

The Access Restriction limits OCRA to "officers of the court" – attorneys and governmental agencies. Va. Code § 17.1-293(E)(7). The Dissemination Restriction prohibits those with access from "post[ing] on any website" or "redistribut[ing] to any third party" information in public filings obtained from OCRA, Va. Code § 17.1-293(H), including new complaints, to which this Court found a First Amendment right of access. *Courthouse News Serv. v. Schaefer*, 2 F.4th 318 (4th Cir. 2021). Attorneys may include OCRA content "in products or services provided to a third party," but only if "***not made available to the general public***," § 17.1-293(H) – i.e., not given to the press. It authorizes clerks to "deny" OCRA access "to ensure compliance," *id.*, and Petitioners do enforce it through their OCRA Subscriber Agreements. Comp., ¶¶ 57-59 & Exhs. 3-5.

**B.** <u>**This Court Addressed Standing in CNS' First Case Over OCRA**</u>

CNS is a nationwide news service that reports on civil litigation in all 50

4

states.  Comp., ¶ 29.  CNS serves "as a 'pool reporter' for national media, which disseminate CNS's litigation news to the broader public."  *Courthouse News Serv. v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020) ("*Planet III*").  If CNS cannot report on filings in courts difficult to reach, "the expression of the newspapers, lawyers, libraries, and others who rely on CNS for information will also be stifled."  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014) ("*Planet I*").

Seeking access to OCRA, CNS in 2021 challenged the Access Restriction.  Because access would be meaningless if the Dissemination Restriction prevented CNS from reporting on records obtained from OCRA, CNS also challenged it.

Defendants moved to dismiss under Rule 12(b)(6), and Defendant Karl Hade, Executive Secretary of OES, under Rule 12(b)(1).  The court largely denied the motions, finding Hade fit the *Ex parte Young*, 209 U.S. 123 (1908) exception to sovereign immunity.  *Courthouse News Serv. v. Hade*, 580 F. Supp. 3d 289 (E.D. Va. 2022) ("*Hade I*").  The Commonwealth intervened after CNS dismissed Hade without prejudice.  In 2022, the court granted summary judgment for defendants, declining to apply strict scrutiny – because CNS could, theoretically, report on records available at courts in the far reaches of the Commonwealth – and finding both restrictions passed intermediate scrutiny.  *Hade II*, 631 F. Supp. 3d at 360-70.

The ruling did not mention or address *Soderberg v. Carrion*, 999 F.3d 962 (4th Cir. 2021), which held another district court "erred in refusing to apply strict

scrutiny on the premise … that [precedent] demand[s] such scrutiny only where there is an absolute prohibition on the publication of information." *Id.* at 969.

On appeal, a divided panel affirmed as to the Access Restriction, but reversed as to the Dissemination Restriction for lack of standing because CNS did not identify a speaker willing to provide information but for the Restriction. That claim was remanded for dismissal ***without*** prejudice. *Smith*, 126 F.4th at 916-17.

The only panel member to reach the merits of the Dissemination Restriction "would hold [it] is a prior restraint … subject to strict scrutiny" under the same authority followed below. *Id.* at 925 (Gregory, Circuit Judge, dissenting) ("prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur") (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)).

**C.** **Lee Joined CNS To Challenge the Dissemination Restriction Because It Impairs Their Ability to Gather News From OCRA Subscribers**

Lee is the fourth largest newspaper publisher in the county, including 12 in Virginia. Comp., ¶¶ 19, 45. The Dissemination Restriction impairs Lee's reporting on filings in courts its reporters cannot reach before they close. *Id.*, ¶ 79. In December 2025, Lee joined CNS to challenge the Dissemination Restriction in the Western District of Virginia, where Lee owns several newspapers.

Their Complaint named as defendants Hade and Petitioners Edward Jewett, Brenda Hamilton and Kelly Flannagan, Clerks of the Circuit Courts for the Cities

of Richmond, Roanoke and Bristol – courts where the Dissemination Restriction blocked an OCRA subscriber from providing information on filings Plaintiffs could not get from the courthouse by deadline. Comp., ¶¶ 43, 49, 77, 79, 83-85.

In February 2026, Defendants moved to dismiss, including on sovereign immunity grounds. On May 5, the district court denied the motions (Doc. 73) ("MTD Order"). Defendants noticed appeals from the sovereign immunity ruling, which were consolidated in No. 26-1648 (Doc. 3), and moved to stay (Doc. 81).

On June 4, Defendant Clerks moved to certify for interlocutory review the rulings that the Complaint plausibly alleges (1) the Dissemination Restriction is a prior restraint on OCRA subscribers' speech that (2) CNS and Lee have standing to challenge because it impairs their right to gather news from a willing speaker.

On July 2, the court granted the motions to stay and certify (Doc. 94) ("MTC Order"). It adopted Petitioners' view that this case presents a "singular claim … that the Dissemination Restriction is an unconstitutional prior restraint," and "there is substantial ground for difference of opinion" whether it is, which is "directly relevant to its constitutionality." *Id.* at 6-9. On standing, it said "an immediate appeal '*may* materially advance the ultimate termination of the litigation,'" *id.* at 10 (quoting § 1292(b)), and that "the Fourth Circuit has implied, but never explicitly held, that a receiver of speech must assert an injury that is derivative of the speaker's injury." *Id.* at 11.

## ARGUMENT

Part of the confusion on certification may stem from the fact that while CNS and Lee assert one First Amendment claim, that single claim has two components.

*First*, their Complaint alleges the Dissemination Restriction "interfere[s] with [their] right to receive newsworthy information from willing speakers" under the First Amendment by barring OCRA subscribers from providing information in public civil records obtained via OCRA. *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 228-29 (4th Cir. 2019); Comp., ¶¶ 62, 67-85, 89-90.

*Second*, CNS and Lee allege the Restriction's interference with their right to gather news violates the First Amendment because the restraint it imposes on "those with access to OCRA" fails to satisfy constitutional scrutiny. Comp., ¶¶ 61, 87-91; *see, e.g., In re Wall St. J.*, 601 F. App'x 215 (4th Cir. 2015) (per curiam).

Consequently, whether the Dissemination Restriction constitutes a prior restraint may be "directly relevant to its constitutionality," MTC Order 7, but it will not materially advance the ultimate termination of this case, as required. At most, it would change the level of scrutiny, as in *Hade II*. Discovery would be nearly identical, as the tests are similar. *See McCullen v. Coakley*, 573 U.S. 464, 486 (2014). The district court could even "declin[e] to decide the level of scrutiny to be applied" if it finds the Restriction "cannot survive even intermediate scrutiny." *Billups v. City of Charleston*, 961 F.3d 673, 684-85 (4th Cir. 2020).

The right "to gather news" – "'to receive information and ideas' from a willing speaker,'" *Overbey*, 930 F.3d at 227-28 (quoting *Stephens v. Cty. of Albemarle*, 524 F.3d 485, 491 (4th Cir. 2008)) – is derivative, but not the way Petitioners contend. It is derivative because CNS and Lee must show the "'gag'" on OCRA subscribers is unconstitutional. *Id.* That is not a standing issue if there is a willing speaker, as shown by the case Petitioners cite. *Va. St. Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976) ("Freedom of speech presupposes a willing speaker. But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients[.]").

Petitioners cite no case holding that where a willing speaker declines to provide information because of a legally binding restraint, the media must ***also*** show he has "an objective threat or fear" the restraint will be enforced if he speaks. MTC Order 11. The refusal to speak due to the restraint is sufficient. *Overbey*, 930 F.3d at 228-29; *In re Dow Jones & Co.*, 842 F.2d 603, 607-08 (2d Cir. 1988) ("record reveals that were they not restrained, [attorneys and parties] would … be willing speakers"); *United States v. Wecht*, 484 F.3d 194, 202 (3d Cir. 2007) (media have standing "'when there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so'").

**I.** **<u>This is Not an 'Exceptional Situation' Justifying Interlocutory Review</u>**

Even where a district court certifies issues, this Court "must nevertheless weigh particular applications with caution: interlocutory review is not to be granted lightly." *Fannin*, 873 F.2d 1438 at *2. "[C]ertification by a district court … does not require us to grant leave to appeal. The immediate appeal of a certified question is an extraordinary remedy, which may be granted or denied at the sole discretion of the court of appeals." *Id.*; *Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc.*, 317 F.2d 741, 742 (4th Cir. 1963).

> Section 1292(b) "by its terms requires us independently to determine:
>
> (1) whether the lower court's order indeed turned on a 'controlling question of law'; (2) whether there is 'substantial ground for difference of opinion' with respect to the applicable legal principles; and (3) whether an immediate appeal would 'materially advance the ultimate termination of the litigation.'

*Fannin*, 873 F.2d 1438 at *2. "[W]e are also bound 'to protect the integrity of the congressional policy against piecemeal appeals.'" *Id.* "We should therefore permit interlocutory appeals under § 1292(b) *only* from a carefully 'limited group of orders,'" *id.*, "and 'in *exceptional situations* in which [doing so] would avoid protracted and expensive litigation.'" *Id.* "A *prospective appellant* … carries 'the *burden of persuading* the court of appeals that *exceptional circumstances* justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Id.*; *Medomsley Steam Shipping*, 317 F.2d at 743.

Petitioners have not and cannot satisfy these requirements.

**A.      Permission to Appeal the Prior Restraint Ruling Should be Denied**

Misreading the Complaint and the law do not warrant permission to appeal.

**1.      Reversal Would Not End Nor Significantly Alter the Case**

Ignoring Plaintiffs' claim that the Dissemination Restriction impairs their "First Amendment rights … to gather [and] disseminate … newsworthy information," Comp., ¶¶ 62, 89, Petitioners say that "[i]f the statute is not a prior restraint …, the lawsuit fails and should be dismissed." Pet. 17-18.[3]

They cite no case so holding because, as in many First Amendment contexts, "[t]he label is not what matters." *John Doe No. 1 v. Reed,* 561 U.S. 186, 194 (2010). Unlike the case they cite, where the "complaint [did] not contain sufficient allegations to put the defendant on notice of [a] medical negligence claim," *Papania v. United States*, 715 F. Supp. 3d 789, 801 (E.D. Va. 2024), claims for interference with the right to gather news because a restriction on sources is a prior restraint are not subject to dismissal if a court decides the restriction falls into another category of First Amendment infirmary. Either the standard of scrutiny remains the same, *Soderberg*, 999 F.3d at 968 n.3, or it changes, as in *Hade II*.

Petitioners concede the point by asserting the ruling has "implications on

---

[3] CNS and Lee conditionally moved to amend the Complaint to add facts bearing on, *inter alia*, strict and intermediate scrutiny (Doc. 49). If the ruling below is reversed, that motion would no longer be moot. *See* MTD Order 5 n.7.

discovery" and the outcome.  Pet. 17.  But even finding the Dissemination

Restriction is subject to intermediate scrutiny would not "'substantially shorten the

litigation.'"  Pet. 23.  The tests are similar so discovery will include the "evidence"

intermediate scrutiny "requires the government to produce" showing the

Restriction "'materially advances an important or substantial interest by redressing

past harms or preventing future ones," that "[t]hese harms [are] 'real, not merely

conjectural,'" *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 515 (4th Cir.

2002), and that "it 'seriously undertook to address the problem with less intrusive

tools readily available.'"  *Billups*, 961 F.3d at 688.  If the evidence does not show

that, the court need not decide which level of scrutiny applies.  *Id.* at 684-85.

### 2.     There is No Real Dispute OCRA Bars Speech in Advance

A "substantial difference of opinion" among courts does not exist "where,"

as here, "our circuit has answered the question."  *In re Miedzianowski*, 735 F.3d

383, 384 (6th Cir. 2013).  Petitioners claim the Dissemination Restriction is not a

prior restraint but a "subsequent punishment" under *Alexander*, 509 U.S. at 550.

Pet. 19.  But on restrictions that prohibit speech about public records and punish

violations, this Court has explained that "it [is] 'not dispositive' whether the

challenged … statute [is] 'view[ed] as a prior restraint or as a penal sanction'" –

i.e., where the "'***state attempts to punish publication after the event***'" – "because

'even [a penal sanction] requires the highest form of state interest to sustain its

12

validity.'" *Soderberg*, 999 F.3d at 968 n.3 (quoting *Smith v. Daily Mail Pub'g Co.*, 443 U.S. 97, 101-02 (1979)) (brackets in original).[4]

Moreover, Petitioners cannot carry their burden where they "have not provided a single case," *Couch v. Telescope Inc.*, 611 F.3d 629, 633-34 (9th Cir. 2010), holding a statute like the Dissemination Restriction "does not forbid speech before it occurs." Pet. 21. A "substantial ground for difference of opinion arises *only if* the disagreement on controlling law exists *between courts*." *U.S. ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016).

On the other hand, a "closely analogous body of case law" supports finding the Dissemination Restriction a prior restraint. *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994). This Court has held "gag orders" – barring lawyers and participants from making certain "'extrajudicial statement[s]'" that may reach the media – "are prior restraints" because they "actually forbid speech activities." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796-97 (4th Cir. 2018) (quoting *Alexander*, 509 U.S. at 550); *see Wall St. J.*, 601 F. App'x at 218; *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975). This rule applies to "*any law* 'forbidding certain communications when issued in advance of the time that such communications are to occur.'""

---

[4] The differences between *Daily Mail* and *Alexander* prove the point. The statute in *Daily Mail* barred publishing names of alleged juvenile offenders without court approval and made violations a misdemeanor, which the state court called a prior restraint, 443 U.S. at 98-102, while "the RICO forfeiture statute" in *Alexander* "does not criminalize constitutionally protected speech." 509 U.S. at 552, 555.

*Ostergren v. Frick*, 2020 WL 1501918, *4 (W.D. Mich. Mar. 30, 2020), *aff'd*, 856 F. App'x 562 (6th Cir. 2021); *Baudin v. Palo Alto Unified Sch. Dist.*, 2026 WL 370395, *3 (N.D. Cal. Feb. 10, 2026) ("**statutes, regulatory schemes, or judicial orders**"); *see Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cir. 2016) ("**generally applicable statute or regulation** … operates as a prior restraint"); *Stephens v. Cnty. of Albemarle*, 2005 WL 3533428, *8 (W.D. Va. Dec. 22, 2005) ("**prior restraint in the form of a state regulation or statute**").[5]

The only potentially pertinent case Petitioners cite is *Hade II*, which held the Dissemination Restriction was subject to intermediate and not strict scrutiny – despite barring CNS from reporting on court records lawfully obtained if it could access OCRA – because CNS could report on records it was able to "obtain[] physically at the courthouse." 631 F. Supp. 3d at 368.

This vacated ruling cannot create "'*substantial* ground for dispute.'" *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). It overlooked *Soderberg*, which reversed another ruling that strict scrutiny "only" applies to "an absolute prohibition on the publication of information" and its application of intermediate scrutiny because the

---

[5] While "no controlling authority" has addressed the Restriction, Pet. 19, "the mere presence of … a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor*, 79 F.3d at 284. Courts "analyze the strength of the arguments in opposition to the challenged ruling" to determine if there "truly … is a *substantial* ground for dispute." *Id.*

information could be obtained from other court records.  999 F.3d at 969-70.[6]  The

court below, and Judge Gregory in *Smith*, cited *Soderberg* because it holds "strict

scrutiny review … is clearly required" of any attempt – absolute or not – to

prohibit or punish dissemination of information "'released to the public in official

court records'" and "'lawfully obtained.'"  999 F.3d at 968-69 & n.3.[7]

B.      <u>**Permission to Appeal the Standing Ruling Should Also be Denied**</u>

The district court granted certification "to clarify the precise showings a

plaintiff must make to prevail on a right-to-receive-speech theory of standing."

MTC Order 11.  But this Court has already done so, and those cases were correctly

applied.  Interlocutory review is not appropriate to consider Petitioners' attempt to

alter the analysis, not least because "'[w]hen a challenged statute risks chilling the

exercise of First Amendment rights, the Supreme Court has dispensed with rigid

standing requirements."  *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013).

---

[6] *Soderberg* shows why Petitioners' cases – involving a protective order against
dissemination of discovery not in public court records, *Seattle Times Co. v.
Rhinehart*, 467 U.S. 20 (1984), and a ban on press interviews with jail inmates
except on "public tours," *Pell v. Procunier*, 417 U.S. 817, 830 (1974) – are
"distinguishable, inapposite" and therefore "do not demonstrate a substantial
ground for difference of opinions on any ***controlling*** questions of law."  *Clark
Const. Grp., Inc. v. Allglass Sys.*, 2005 WL 736606, *3 (D. Md. Mar. 30, 2005).

[7] Interlocutory review is also inappropriate for a ruling that can be affirmed on the
alternate ground that the "unbridled discretion" the Dissemination Restriction gives
clerks to terminate access for alleged violations is a "prior restraint."  *City of
Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

### 1.     <u>**Standing is Often Not Certified as Plaintiffs Can Amend**</u>

The district court said an "immediate appeal '*may* materially advance the ultimate termination of this litigation,'" MTC Order 10, but did not say how. Any "'dismissal for lack of standing ... must be one without prejudice.'" *Smith*, 126 F.4th at 917.  CNS and Lee would be entitled to amend to address any ruling.

This and its reliance on "facts" are why "standing" is often "not appropriate" for "[i]nterlocutory appeal." *Moore v. Va. Cmty. Bankshares, Inc.*, 2023 WL 12007530, *2 (W.D. Va. June 21, 2023); *Does v. Musk*, 2026 WL 242062, *3 (D. Md. Jan. 29, 2026) ("any adverse appellate ruling on standing would have little impact on advancing the termination of this case because Plaintiffs would have a substantial basis [for] … leave to amend to insert the additional facts that would more conclusively demonstrate standing"); *Prince v. Johnson Health Tech Trading, Inc.*, 2023 WL 3190403, *3 (W.D. Va. May 1, 2023) (immediate appeal "may cause additional pre-trial and trial effort to cure the standing issue").[8]

### 2.     <u>**Recent Precedent Resolves the Issue Petitioners Raise**</u>

In *Stephens*, this Court examined the "'well established'" rules for claims where non-media plaintiffs must show a speaker "willing to convey the

---

[8] The only case Petitioners cite that found standing appropriate for interlocutory review was the "first ever to permit a party to pursue relief under the Emoluments Clauses" that "could result in an unnecessary intrusion into the duties and affairs of a sitting president."  *In re Trump*, 928 F.3d 360, 368-70 (4th Cir. 2019), *reh'g en banc*, 958 F.3d 274 (4th Cir. 2020), vacated, 141 S. Ct. 1262 (2021).

information" if "not constrained by" a restriction, 524 F.3d at 491-92, which it applied in *ACLU v. Holder*, 673 F.3d 245, 255 (4th Cir. 2011).

Applying *Stephens* and *ACLU* in a media case – without deciding "whether the news media's interest in newsgathering can be invaded when no willing speaker exists," *Overbey*, 930 F.3d at 229 n.13[9] – the Court articulated this governing rule:  "For the purposes of constitutional standing, a person qualifies as a willing speaker if she would be willing to provide information on a matter of public significance to the news media but chooses not to because she does not want to violate" a restriction on speech (there, a settlement agreement).  *Id.* at 228.

Petitioners combine the reference in *Smith* to CNS' "'assertion of a derivate injury'" with cases noting "a receiver's rights are reciprocal to a speaker's rights" to argue the media must **also** allege a willing speaker "suffered an objective threat or fear of having the … [r]estriction enforced against him."  MTC Order 10-11.

Petitioners cite no authority applying their theory because a speaker "willing to provide information … but [who] chooses not" to avoid violating a restriction on speech – i.e., "a willing speaker," *Overbey*, 930 F.3d at 228 – has standing.  "Such self-censorship is "enough 'for an injury-in-fact to lie.'"  *Edgar v. Haines*, 2 F.4th

---

[9] Review is also inappropriate because Petitioners' theory would require the Court to reach this issue, as "many circuits have found media standing … without expressly finding the existence of a willing speaker."  *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996).

298, 310 (4th Cir. 2021) ("'[i]n First Amendment cases, the injury-in-fact element is commonly satisfied by a sufficient showing of 'self-censorship'").[10]

### C.     <u>Petitioners Do Not Show the Required Exceptional Circumstances</u>

Although Petitioners carry "'the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment,'" *Fannin*, 873 F.2d 1428 at *2, neither they nor the district court mention or discuss them.

Shortly after § 1292(b) was enacted, this Court said its "legislative history clearly indicates that its use was to be ***confined to exceptional cases*** 'where a decision of the appeal may avoid protracted and expensive litigation.'" *Medomsley Steam Shipping*, 317 F.2d at 743. Consequently, "the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin*, 873 F.2d 1438 at *5.

Under *Fannin* and *Medomsley*, the Court should not allow an interlocutory appeal here, where the questions presented are "a long way from that model." *Id.*

---

[10] While a "'chilling effect'" must be "'objectively reasonable'" to provide standing, evidence of "'self-censorship'" shows it is. *Edgar*, 2 F.4th at 310. The Complaint alleges why OCRA subscribers self-censor to avoid enforcement: (1) the clerks have discretion to terminate OCRA access for violations, Comp., ¶¶ 4, 57-59, and (2) the Commonwealth has said violations of OCRA's restrictions "constitutes professional misconduct … warranting 'suspension or revocation'" of the attorneys' license. *Id.*, ¶¶ 4, 61 & n.1.

**II. <u>Section 1292(b) May Not be Used to Evade Limits on Collateral Orders</u>**

Because the requirements of § 1292(b) are not met, it is irrelevant whether these issues "overlap with the pending Eleventh Amendment" appeal. Pet. 25. It is also inaccurate. And even if they did, it would not support permission to appeal.

Petitioners cite no case permitting interlocutory appeal under § 1292(b) on this ground for good reason. It would create the harm the Supreme Court sought to avoid: "a rule loosely allowing pendant appellate jurisdiction would encourage parties to parlay *Cohen*-type collateral orders into multi-issue interlocutory appeal tickets." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995) (applying to civil case *Abney v. U.S.*, 431 U.S. 651, 663 (1977)) ("[S]pecial considerations permeating claims … which justify a departure from the normal rule of finality … do not encompass other claims. … Any other rule would encourage criminal defendants to seek review of, or assert, frivolous double jeopardy claims in order to bring . . . nonappealable questions to the attention of the courts of appeals.").

This is precisely the case here. Petitioners' sovereign immunity appeal lacks merit. They assert the *Ex parte Young* exception does not apply on the theory they have not enforced or threatened to enforce the Dissemination Restriction, Pet. 26, even though § 17-1-293(H) explicitly authorizes Circuit Clerks to enforce it and Petitioners actually do enforce it through their OCRA Subscriber Agreements.

Comp. ¶¶ 58-59 & Exh. 3 ¶ 8(e); Exhs. 4-5 ¶ 6(e).[11]

In any event, there is no meaningful overlap between the *Ex parte Young* issues there and the issues Petitioners seek permission to appeal here.

Whether ORCA imposes "'some duty in regard to the enforcement'" on Petitioners, *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010), does not "overlap" with whether another part of the statute is a prior restraint on OCRA subscribers. Pet. 25-26. If it did, sovereign immunity would always "overlap" the merits, at least in cases involving interpretation of a statute, evading *Swint.*

"The same is true of standing." *Id.* at 26. The doctrines are distinct. *King v. Youngkin*, 122 F.4th 539, 544 (4th Cir. 2024) (rejecting theory "any threatened enforcement … is insufficiently 'imminent' to support an *Ex parte Young* action" because it "sounds more in justiciability (whether ripeness or standing) than sovereign immunity."). Moreover, media standing exists once a willing speaker declines to provide information. *Overbey*, 930 F.3d at 228. No further "'[f]ears of [future] enforcement,'" Pet. 27, are required. *Edgar*, 2 F.4th at 310.

---

[11] Petitioners also have an economic incentive to enforce the Restriction to prevent, in the *Hade* court's words, "a detrimental impact on the clerk of the courts' budget" from lost OCRA fees – which Hade's counsel conceded may not be a valid concern "under the First Amendment," *Smith*, No. 22-2110, Doc. 26-2 at 187 – and "an indeterminate loss of revenue due to loss of copy fees." Doc. 50-3 at 13.

**CONCLUSION**

There is no substantial ground to dispute the rulings at issue, and it is highly "unlikely that certification of an interlocutory appeal will 'materially advance the ultimate termination of the litigation.'" *Difelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 910 (E.D. Va. 2005). Review could not conclusively resolve any issue in this case, let alone all of them. "[I]nstead, an interlocutory appeal will simply add unnecessary delay and cost." *Id.* Given the schedule in the sovereign immunity appeal, this case could be "fully litigated in the district court before the conclusion of any interlocutory appeal." *Id.* Permission to appeal should be denied.

Date: July 24, 2026                                       Respectfully submitted,

                                                                  */s/ Dabney J. Carr, IV*

Roger Myers                                        Dabney J. Carr IV
Rachel Matteo-Boehm                          Lauren H. Miller
**BRYAN CAVE LEIGHTON PAISNER LLP**    **TROUTMAN PEPPER LOCKE LLP**
3 Embarcadero Center, 7th Floor         Post Office Box 1122
San Francisco, California 94111          Richmond, Virginia 23218
Tel: (415) 675-3400                          Tel: (804) 697-1200
Fax: (415) 675-3434                          Fax: (804) 697-1339
roger.myers@bclplaw.com                  dabney.carr@troutman.com
rachel.matteo-boehm@bclplaw.com      lauren.h.miller@troutman.com


*Counsel for Plaintiffs-Appellants Courthouse News Service,*
*Lee Enterprises, Incorporated, and Lee BHM LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), this document complies with (1) the word limits of Federal Rule of Appellate Procedure 5(c), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,186 words; and (2) the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this document has been prepared in a proportionally spaced typeface (14 point, Times New Roman font) using Microsoft Word.

*/s/ Dabney J. Carr, IV*
Dabney J. Carr